NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SARA SOLANO**<br><br>    **Plaintiff,**<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | 03-CV-1043 (WJM)<br><br><br><br>**OPINION** |

Shelley A. Weinberg
17 Academy Street
Suite 706
Newark, NJ 07102
*Attorney for Plaintiff*

Anthony J. LaBruna, Jr.
Assistant U.S. Attorney
970 Broad Street
Suite 700
Newark, NJ 07102
*Attorney for Defendant*

**MARTINI, U.S.D.J.:**

**I. Introduction**

Plaintiff Sara Solano brings this appeal pursuant to 42 U.S.C. § 405(g), seeking review of the final determination by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB"). After hearing plaintiff's case, Administrative Law Judge O'Leary ("ALJ") issued a written opinion holding that plaintiff retained the residual functional capacity to do sedentary work and therefore was not entitled to benefits. The Appeals Council affirmed the ALJ's opinion, rendering the decision final.

Plaintiff claims that the ALJ's decision lacked substantial evidence.  Specifically, plaintiff contends that the ALJ erred in weighing both her testimony and that of her doctor in determining her residual functional capacity.  For the reasons below, the decision of the Commissioner is **AFFIRMED**.

**II.  Case History**

   **A.  Factual Background**

Plaintiff Sara Solano was born in Cuba in 1960, and came to the United States in 1980 after receiving the equivalent of a high school degree.  She understands basic English, but cannot read or converse in English.  Her relevant employment history involved packing clothing in a warehouse, placing price tags on coats, and placing sliced meat into packages.  (Tr. 27, 32, 53.)[1] Plaintiff injured her lower back at work in 1996 and underwent surgery to remove a herniated disk in March 1997.  (Tr. 26-27.)  The surgery went well and allowed plaintiff to return to work after six months of recovery.  (Tr. 45.)  Plaintiff later began having problems with back pain, which forced her to take time off from work.  Plaintiff claims that despite her doctor's efforts to control the pain with medication, she was eventually terminated from her job in June 2000 as a result of the amount of time she missed.  (Pl.'s Br. at 14-15.)

   **B.  Procedural Background**

Plaintiff first applied for DIB in January 2001, claiming that she was disabled and entitled to benefits from June 13, 2000 onward ("claim one").  (Tr. 15-16.)  The application was denied by the initial examiner, and again on reconsideration.  (Tr. 15.)  An ALJ denied plaintiff's appeal, but the Appeals Council remanded the case back to the ALJ for re-evaluation.  (*Id.*)  On remand, the same ALJ again denied the appeal.  (Tr. 21.)  The Appeals Council likewise declined to extend benefits, thus exhausting plaintiff's administrative remedies and rendering the

---

[1] The designation "Tr." refers to the administrative record.

2

decision final. (Pl.'s Br. at 2.) Plaintiff then requested this Court review the decision of the Commissioner.

While the review of claim one was pending in this Court, plaintiff filed a second DIB claim in September 2002 alleging disability from March 29, 2002 onward ("claim two"). (Pl.'s Br. at 2.) The ALJ granted plaintiff benefits in claim two from October 25, 2002 onward, but ruled that claim one could not be reopened and further consideration was barred by *res judicata*. (*Id.*) Plaintiff requests review of the final decision in claim one and seeks benefits for the period from June 2000 to March 29, 2002. (*Id.*)

### III. Jurisdiction

At the outset, plaintiff raises a jurisdictional issue. While plaintiff's discussion in this regard is convoluted, she argues that the effects of the ALJ's refusal to reopen claim one while hearing claim two should not act as a bar to this Court's jurisdiction. Notably, defendant does not object to this Court's jurisdiction.[2] (Def. Br. at 1.) Furthermore, this Court is duly authorized to hear an appeal pursuant to 42 U.S.C. § 405(g), which provides that the District Court has jurisdiction over final decisions of the Commissioner of Social Security made after a hearing. *See* 42 U.S.C. § 405(g). Thus, the ALJ's decision in claim two has no effect on the instant appeal.

### IV. Standards of Review

#### A. Scope of Review

Findings of fact by the ALJ must be accepted as conclusive by a reviewing court if they are supported by substantial evidence. *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980). *See also* 42 U.S.C. § 405(g). The substantial evidence standard is a deferential standard of review.

---

[2] Understandably, defendant misconstrues plaintiff's argument as a request that this Court review the ALJ's refusal to reopen claim one while hearing claim two. (Def.'s Br. at 22-25.) The Court need not analyze defendant's rebuttal, as jurisdiction is proper and plaintiff is not requesting review of the ALJ's decision in claim two.

*Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). It "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). It is more than a "mere scintilla of evidence but may be less than a preponderance." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988).

In reviewing the ALJ's decision, a court looks not only for an expression of the evidence supporting the result, but also an indication of the evidence which was rejected. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). "In the absence of such an indication the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Id.* However, in deciding whether the ALJ's decision is supported by substantial evidence, a court may not substitute its judgment for that of the ALJ, even if the court might have reached a different conclusion. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). This Court's inquiry is whether the record yields such evidence as would allow a reasonable mind to accept the conclusions reached by the Commissioner. *Pierce*, 487 U.S. at 565.

**B. Statutory and Regulatory Standards for Determining Disability**

In order to be entitled to DIB, the claimant must be found to be disabled under the Social Security Act. To be considered disabled, an individual must be unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment claimed must also be of such severity that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

4

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The guidelines of 20 C.F.R. § 404.1520 require the ALJ to follow a five-step process in determining whether a claimant is disabled as defined by 42 U.S.C. § 423.  First, if the claimant is currently engaged in any substantial gainful activity, the ALJ must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).  If the claimant is not currently working, the ALJ must then move to the second step to determine if the claimant has an impairment or combination of impairments that is "severe" in that the claimant's physical or mental ability to do basic work activities is significantly limited.  20 C.F.R. § 404.1520(c).  At the third step, the ALJ will consider whether the impairment meets or equals an impairment listed in 20 C.F.R. § 404 subpart P, appendix 1 (the "listings").  If the impairment does meet one of the listings, the claimant will be found disabled without further inquiry into age, education, and work experience.  20 C.F.R. § 404.1520(d).

If the claimant does not have an impairment contained in the listings, the ALJ must engage in a residual functional capacity assessment.  20 C.F.R. § 404.1545(e).  The fourth step then requires the ALJ to determine whether the claimant's residual functional capacity allows the claimant to perform past relevant work.  20 C.F.R. § 404.1520(f).  *See also* 20 C.F.R. § 404.1545.  If a claimant can still perform past relevant work, she is not disabled.  Finally, if the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g)(1).  If the claimant can perform other work, she is not disabled.  The claimant has the burden of showing that she is unable to return to her customary occupation, while the Commissioner must show that the claimant has the capacity to perform other work in the

economy. *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1153 (3d Cir. 1983).

**V. Discussion**

In reaching the decision that the plaintiff was not entitled to DIB, the ALJ performed the five-step analysis required under 20 C.F.R. § 404.1520. The ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability, plaintiff's impairment is "severe" based on the requirements outlined in 20 C.F.R. § 404.1520(b), the impairment does not meet or equal one of the impairments in the listings, plaintiff has the residual functional capacity to do sedentary work, and plaintiff is capable of performing both her past relevant work and other jobs that exist in the national and local economies. (Tr. at 19-20.) Thus, the ALJ concluded that the plaintiff was not disabled as defined by 42 U.S.C. § 423 and 20 C.F.R. § 404.1520, and therefore was not entitled to benefits.

  **A. ALJ's Rejection of Evidence from Dr. Ortiz**

Plaintiff claims that the ALJ did not provide an adequate basis for rejecting testimony from Dr. Thomas Ortiz, and therefore the decision to deny benefits was not supported by substantial evidence. (Pl.'s Br. at 24.) Although it is true that significant weight should generally be given to the opinions of treating physicians, these opinions need not be controlling if the findings of the treating physician are contradicted by other medical evidence in the record. *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000) (citations omitted). *See also* 20 C.F.R. § 404.1527(d)(2). In determining the credibility of an expert, the ALJ is permitted to consider factors such as the nature and extent of the treatment relationship, the expert's area of specialization, and the amount of understanding the expert has of Social Security Administration (SSA) disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(6). The ALJ

is also bound to consider the testimony of state agency medical and psychological consultants, applying the same rules for evaluating their credibility as is used for treating physicians. 20 C.F.R. § 404.1527(f). The ALJ has discretion to assign weight to medical testimony, and "the opinions of non-examining physicians may override a treating source's opinions provided that the former are supported by evidence in the record." *Alexander v. Shalala*, 927 F.Supp. 785, 795 (D.N.J. 1995) (citations omitted).

Dr. Ortiz has been plaintiff's treating physician for approximately 13 years. (Pl.'s Br. at 24.) In March 2002, Dr. Ortiz filled out a residual functional capacity assessment form indicating that plaintiff could sit or stand for only three hours per day, and could not walk at all during an eight hour work day. (Tr. 353.) Dr. Ortiz also indicated that plaintiff was not able to lift any weight, and that her pain was severe enough that it constantly interfered with her attention and concentration. He went on to conclude that plaintiff was able to work for zero hours out of an eight hour workday. On that same form, Dr. Ortiz indicated that onset of disability was September 1996 and that the limitations noted above could be considered to exist since that date. (Tr. 354.)

However, these opinions are contradicted by Dr. Ortiz's notes, other experts, and the plaintiff herself. Dr. Ortiz cleared the plaintiff to return to work twice during this period, and plaintiff actually worked for approximately four years after the 1996 injury. (Tr. 19, 254, 256.) Plaintiff told examining physician Dr. Marc Friedman that she felt okay for three years after the 1997 back operation, and testified that pain did not begin to bother her until March 2001. (Tr. 28, 311.) Examining physician Dr. M.A. Mohit observed that the plaintiff was in no acute distress during his examination of her and was not uncomfortable while seated. (Tr. 294.) A state agency doctor's report from June 2001 indicated that plaintiff could lift twenty pounds

7

occasionally or ten pounds frequently, and could stand, walk, or sit for about six hours in an eight hour work day. (Tr. 300.) Finally, the ALJ took into account Dr. Ortiz's lack of familiarity with SSA programs and evidentiary requirements in assigning credibility. *See* 20 C.F.R. § 404.1527(d)(6).

In sum, the opinion of Dr. Ortiz is not well supported, even by his own notes, and is heavily contradicted by other medical evidence in the record. The ALJ did not simply ignore evidence from Dr. Ortiz, but noted that he "considered Dr. Ortiz's opinion, [and found that] it is not persuasive in light of the medical and other evidence in the record." (Tr. 17.) Therefore, there is substantial evidence in the record supporting the ALJ's decision to place more weight on evidence from non-treating doctors and to reject evidence from Dr. Ortiz.

### B. ALJ's Rejection of Plaintiff's Testimony

Plaintiff next claims that the ALJ improperly rejected her subjective complaints of pain. (Pl.'s Br. at 29.) The ALJ must give serious consideration to the plaintiff's subjective complaints of pain, although he is not obliged to accept without question the credibility of such subjective evidence. *LaCorte v. Bowen*, 678 F.Supp. 80, 83 (D.N.J. 1988) (citations omitted). An ALJ is free to reject the testimony so long as he indicates the basis for that conclusion in his decision. *Id.*

In evaluating subjective symptoms such as pain, the SSA requires the claimant to show that there is a medically determinable impairment that could reasonably be expected to produce the symptoms of which she complains. 20 C.F.R. § 404.1529(b). If a medically determinable impairment is proven, the ALJ will next consider all available evidence regarding the intensity and persistence of symptoms in order to determine the effect of the pain on claimant's capacity to work. 20 C.F.R. § 404.1529(c). In making this second determination, the ALJ may take into

account a wide range of factors, including objective medical evidence and other evidence regarding the claimant's daily activities and functional limitations. *Id.*

In his written opinion, the ALJ noted that he considered "all symptoms, including pain," in analyzing the claimant's capacity for work. (Tr. 18.) After examining all evidence in the record, the ALJ concluded that the claimant had an impairment that resulted in a diminished work capacity such that she could perform sedentary work activity, including limited lifting and carrying, in addition to six hours of sitting per workday. (Tr. 19.) He also determined, based on her testimony, that since plaintiff was able to read, drive a car, cook dinner, and go shopping, she also would be able to work at a sedentary level. (Tr. 29, 153-55, 165-68.) In addition, the ALJ noted that the plaintiff sat without difficulty during the one hour hearing. (Tr. 19.) He further considered Dr. Mohit's observation that plaintiff sat without difficulty during his examination of her, and had no difficulty getting dressed or getting on or off the examining table. (Tr. 17, 293.) Finally, the ALJ noted a state agency doctor's opinion that plaintiff could lift up to twenty pounds and could stand, walk, or sit for about six hours in an eight hour work day. (Tr. 17, 300.)

Thus, the ALJ did not simply dismiss the plaintiff's subjective testimony, but detailed why he found other evidence to be more credible. This decision is supported by substantial credible evidence. Therefore, the ALJ did not improperly dismiss plaintiff's subjective complaints.

### C. ALJ's Determination of Plaintiff's Ability to Work

Plaintiff's final objection is that the ALJ's determination that plaintiff could return to past relevant work or do other sedentary work based on the vocational expert's testimony lacked substantial credible evidence because the ALJ improperly failed to consider testimony from the expert that would support her claim. (Pl.'s Br. at 35.) Since plaintiff's impairment did not meet

...

one of the listed disabilities, it was necessary for the ALJ to consider plaintiff's residual functional capacity to perform past relevant work and other existing work. *See* 20 C.F.R. § 404.1520. In determining residual functional capacity, the ALJ must consider all relevant evidence and symptoms, including pain. 20 C.F.R. § 404.1545(a)(3). Further, the ALJ may also rely upon the services of a vocational expert in determining plaintiff's ability to work in certain occupations. 20 C.F.R. § 404.1566(e).

The ALJ first determined that the plaintiff's residual functional capacity allowed her to perform sedentary work activity which required lifting and carrying up to ten pounds and sitting for six hours in an eight hour workday. (Tr. 19.) This determination was based on Dr. Mohit's and the state agency doctor's observations, which the ALJ deemed more credible than conflicting testimony from the plaintiff and Dr. Ortiz.

After determining plaintiff had the residual functional capacity to perform sedentary work, the ALJ called upon a vocational expert to assist in determining whether plaintiff could perform past relevant work or other work in the economy. In order to make this determination, the ALJ posed three hypothetical questions to the vocational expert.[3] (Tr. 60.) Testimony from a vocational expert in response to hypothetical questions can constitute substantial evidence when the hypothetical question fairly sets out all of a claimant's impairments. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). The vocational expert first testified that jobs did exist in significant numbers locally and nationally involving the type of work that a person in the ALJ's hypothetical could perform. (*Id.*) The vocational expert then testified that the same job opportunities would be available if that individual had to shift position or get up and stretch

---

[3]The first hypothetical posed by the ALJ assumed a person of the claimant's age, education, and work history, who was restricted to sedentary work involving only simple, repetitive tasks. The next hypothetical retained the same criteria, and added the condition that the individual would be able to sit for 30 to 45 minutes, then would have to shift positions. The final hypothetical retained the original assumptions and added that the individual would have to get up and leave the workstation for a five to ten minute break every 30 to 45 minutes.

10

every half hour to 45 minutes. (*Id.*) Finally, the vocational expert noted that there would be a "negative impact on the person's ability to perform the work" if the person in the hypothetical had to get up and leave the workstation for several minutes at half hour to 45 minute intervals. (Tr. 61.) Counsel for plaintiff followed up the ALJ's hypothetical questions by asking if job opportunities would be affected where a person's concentration was reduced due to pain, a person had difficulty keeping up with the pace requirements of the job, or a person missed six or more days of work per month. The vocational expert testified that any of these situations would preclude a person from consistently performing the work in question. (Tr. 61-62.)

       The ALJ and plaintiff solicited opinions from the vocational expert based on several different characterizations of the plaintiff's impairment. The hypotheticals posed by the ALJ fairly represented plaintiff's condition. In his decision, the ALJ notes that there are significant work opportunities for a person with plaintiff's residual functional capacity, even factoring in the possibility that plaintiff may have to shift position or stretch every so often. (Tr. 19.) It is clear from this decision that the ALJ did not give weight to the hypotheticals posed by plaintiff's counsel. However, inasmuch as the ALJ need not accept the plaintiff's testimony, he also does not have to credit the expert testimony predicated upon it. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987). Because those hypotheticals were based on the disability assessments by plaintiff and Dr. Ortiz, the ALJ need not credit their respective responses as he discredited the testimony on which those responses were based. In conclusion, the ALJ's finding that plaintiff could perform sedentary work, which includes both her past relevant work and a substantial number of jobs in the national economy, is supported by substantial evidence.

## VI.  Conclusion

For the foregoing reasons, this Court finds that the ALJ's decision was adequate and supported by substantial evidence.  Therefore, the Commissioner's decision denying Disability Insurance Benefits to plaintiff Sara Solano is **AFFIRMED**.


**Dated**: July 11, 2005                                                                                     s/ William J. Martini

**William J. Martini, U.S.D.J.**